IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL
DIVISION

| | |
|---|---|
| BEVERLY K. JAQUES,<br><br>            Plaintiff,<br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br>            Defendant. | MEMORANDUM DECISION AND ORDER REVERSING AND REMANDING DECISION OF COMMISSIONER<br><br>Case No. 2:12-cv-215-BCW<br><br>Magistrate Judge Brooke Wells |

Plaintiff Beverly K. Jaques seeks judicial review of the determination of the Commissioner of the Social Security Administration which denied her application for Social Security disability insurance benefits. After careful consideration of the written briefs and the record, the Court has determined that oral argument is unnecessary and issues the following memorandum decision and order REVERSING and REMANDING the decision of the Commissioner.

**BACKGROUND**

Plaintiff, Ms. Jaques, who was born on April 7, 1966, filed for Disability Insurance Benefits on February 2, 2010, alleging disability beginning May 12, 2009.[1] Plaintiff contends she is disabled due to a combination of impairments including, colonic stasis, fibromyalgia, chronic sinusitis, lymphatic hypoplasia, major depressive disorder and an anxiety disorder.[2]

---

[1] Docket no. 18, "Opening Brief" [hereinafter referred to as "Opening Br."]; Docket no. 9, Administrative Record ("Tr.") at 142.

[2] Opening Br. at p. 2. According to the ALJ's Decision, "the medical evidence shows that the claimant has the impairments consisting of colon stasis, fibromyalgia, chronic sinusitis, lymphedema, mood disorder, anxiety

Plaintiff's claim was denied initially on August 4, 2010, and upon reconsideration on March 25, 2011.[3] In March of 2011, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and a hearing was held on August 24, 2011 in Salt Lake City, Utah.[4] On August 26, 2011, the ALJ issued a written decision denying Plaintiff's claim for benefits.[5] Plaintiff then appealed the denial to the Social Security Appeals Council which later denied a review of the ALJ's decision.[6] Thus, ALJ's decision is the final decision of the Commissioner for purposes of judicial review.[7]

In the ALJ's decision, the ALJ found at Step One of the required sequential evaluation process[8] that Plaintiff has not engaged in substantial gainful activity since May 12, 2009, the alleged onset date.[9] At Step Two, the ALJ found that the Plaintiff's severe impairments were "colon stasis, fibromyalgia, chronic sinusitis, lymphedema, mood disorder, anxiety disorder; and drug and alcohol addiction."[10] The ALJ further found the Plaintiff's documented substance abuse condition as a non-severe impairment.[11] In addition, the ALJ stated that "the record

---

disorder, and, drug and alcohol addiction." Tr. at 15.  This a slight variation from what was included in the Opening Brief.

[3] Tr. at 85-88, 91-93.

[4] Tr. at 13.

[5] Tr. at 13-26.

[6] Opening Br. at 1.

[7] See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

[8] See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(explaining the five-step sequential evaluation for determination if a claimant is disabled.).

[9] Tr. at 15.

[10] Tr. at 15.

[11] Tr. at 16.

reveals several other impairments or reported symptoms" however, the ALJ noted that the following conditions were also non-severe:

> …the evidence shows that on March 25, 2011, the claimant complained of chest pressure and palpitations. She underwent anthroscopic surgeries of the right and left knees; a left shoulder MRI revealing only subtle findings; and, she has many other digital images reveal only subtle findings. There is no evidence these impairments, or any other impairment, would significantly impact the claimant's physical and/or mental capacity to perform one or more basic work activities as required in most jobs. Therefore, the undersigned has not considered these individual impairments severe impairments; however, the claimant's fibromyalgia, which is a severe impairment, embraces the claimant's documented diffused pain and myalgias.[12]

At Step Three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained within the regulations.[13]

Next, the ALJ found that Plaintiff had a residual functional capacity ("RFC") for "light work, that is occasionally lifting and/or carrying a maximum of 20 pounds occasionally and 10 pounds frequently."[14] The ALJ also noted the following limitations:

> the claimant must have the option to occasionally alternative positions from sitting to standing; the claimant must [be in] close proximity to the bathroom; the claimant has mild mental limitations, meaning ten percent or less overall restrictions, in the ability to make simple work-related decisions and the ability to respond appropriately to changes in the work setting.[15]

As to the medical opinions rendered regarding the Plaintiff that were considered in making the RFC determination, the ALJ did not give controlling weight to the Plaintiff's treating

---

[12] Tr. at 16 (internal exhibit numbers omitted).

[13] Tr. at 16.

[14] Tr. at 18.

[15] Tr. at 18.

physician Dr. Zachary Campbell who has treated the Plaintiff for bowel problems (described in the records as irritable bowel syndrome, constipation and diarrhea), fibromyalgia, lymphatic hypoplasia, depression and anxiety.[16] The ALJ's opinion notes that Dr. Campbell filled out a Medical Opinion Form[17] and wrote some letters on behalf of the Plaintiff explaining his opinions relating to the Plaintiff's disability and limitations.[18] Specifically, one letter Dr. Campbell wrote for Plaintiff was to her landlord that stated that the Plaintiff's "dogs served a[s] companions, and she should be able to keep them. Beverly has severe depression and anxiety, and these dogs are therapeutic for her."[19]

After noting that Dr. Campbell and Plaintiff did had a long term doctor-patient relationship, the ALJ provided three reasons for finding Dr. Campbell's opinions unpersuasive and not giving them controlling weight.[20]

> First, treatment notes dated February 8, 2010 indicate Dr. Campbell had 'concerns of abuse, divergent. Other issues with medications.' Exhibit 1F/144. Yet, he did not mention these concerns in his medical opinions.
>
> Second, it appears Dr. Campbell relied heavily on the claimant's subjective statements. For example, he notes, 'We filled out the medical opinion form, relating to her Social Security disability paperwork application. We discussed various issues.' Exhibit 1F/44. Thus, it appears his opinions are a combination of his professional opinions and the claimant's subjective complaints.
>
> Finally, on April 7, 2011, Dr. Campbell wrote a letter opining the claimant had 'severe depression and anxiety' and her dogs were "therapeutic for her." Exhibit 21F. However, there is nothing in Dr. Campbell's medical records to substantiate 'severe' depressions. Thus, it appears Dr. Campbell may sympathize with the claimant for one reason or another and be accommodating in her requests for supportive notes to satisfy her requests and, possibly, to avoid unnecessary

---

[16] See Tr. 269-314, 556-568, 602-611; 641-647; 653-657; 677; 685-692.

[17] Tr. at 671-673.

[18] Tr. at 566-567, 638, 641.

[19] Tr. at 641.

[20] Tr. at 671-673.

doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations, where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.[21]

Instead, the ALJ gave great weight to the opinions of Dr. Enright, an independent medical expert who opined that the Plaintiff's impairments do not meet or equal a listing.[22] The ALJ gave moderate weight to state agency consultants who did not examine Plaintiff but concluded that claimant is capable of performing work with some work-related limitations stemming from the claimant's physical or mental impairments.[23]

At Step Four, the ALJ found that the Plaintiff was capable of performing her past relevant work as a general clerk, service clerk, collection clerk and order clerk.[24] Further, in addition to the claimant's past relevant work, the ALJ found at Step Five after considering the testimony of a vocational expert along with the Plaintiff's age, education, work experience and RFC, that the Plaintiff is capable of performing other jobs in the national economy such as officer helper, fingerprint clerk, and information clerk.[25]

Therefore, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.[26] In her appeal, Plaintiff contends that the ALJ's decision should be reversed or at the very least remanded for further proceedings because the ALJ did not provide a proper basis for rejecting the opinion of Plaintiff's treating physician, Dr. Zachary Campbell.[27] Specifically, Plaintiff contends that the ALJ misquoted Dr. Campbell, and by doing so, reversed the meaning

---

[21] Tr. at 23-24 (internal citations to exhibits omitted).

[22] Tr. at 23-24.

[23] Tr. at 24.

[24] Id.

[25] Tr. at 25-26.

[26] Tr. at 26.

[27] Opening Br. at 4.

of his statement.[28] Further, Plaintiff contends that the ALJ provided speculative reasons for rejecting Dr. Campbell's assessment contained within the medical opinion form which the ALJ believed were a combination of Dr. Campbell's own opinions and Plaintiff's subjective complaints. Finally, Plaintiff argues that nothing in the record suggests that Dr. Campbell exaggerated his opinion in order to avoid tension with his patient as the ALJ concluded.[29]

## STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to determining whether her findings are supported by "substantial evidence" and whether the correct legal standards were applied.[30] If supported by substantial evidence, the findings are conclusive and must be affirmed.[31] "Substantial evidence" means "such evidence as a reasonable mind might accept as adequate to support a conclusion."[32] Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[33]

Additionally, the ALJ is required to consider all of the evidence; however, the ALJ is not required to discuss all evidence.[34] In its review, the Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[35]

---

[28] Id. at 11.

[29] Id.

[30] Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); Ruthledge v. Apfel, 230 F.3d 1172, 1174 (10th Cir. 2000); Glenn v. Shalala, 21 F.3d 983 (10th Cr. 1993).

[31] Richardson v. Perales, 402 U.S. 389, 401 (1981).

[32] Clifton v. Charter, 79 F.3d 1007, 1009 (10th Cir. 1996).

[33] Zoltanski v. FAA, 372 F.3d 1195, 1200 (10th Cir. 2000).

[34] Id.

[35] Shepherd v. Apfel, 184 F.3d 1196, 1199 (10 Cir, 1999).

However, a reviewing Court should not re-weigh the evidence or substitute its own judgment for that of the ALJ's.[36] Further, the Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it de novo.'"[37]

In applying these standards, the Court has considered the Administrative Record,[38] as well as the parties' briefs and arguments. The Court finds as follows:

## ANALYSIS

### A. ALJ's Rejection of the Opinion of Treating Physician, Dr. Zachary Campbell.

In support of her claim that the Commissioner's decision should be reversed, Plaintiff argues that the ALJ erred by not providing a proper basis for rejecting the opinion of Plaintiff's treating physician, Dr. Zachary Campbell. Specifically, the Plaintiff argues the ALJ misquoted Dr. Campbell and this misquote changed the meaning of the doctor's actual progress note.[39] In her written opinion, the ALJ stated that Dr. Campbell had "concerns of abuse, divergent. Other issues with medications"[40] but the actual progress note authored by Dr. Campbell states, "<u>I do not have</u> concerns of abuse, divergent. Other issues with medications."[41] The Defendant in this case argues that this error was harmless.[42]

Next, Plaintiff argues that the ALJ's reasoning that Dr. Campbell's opinions were a combination of his professional opinions and the claimant's subjective complaints was in error

---

[36] Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

[37] Lax, 489 F.3d at 1084 (quoting Zoltanski, 372 F.3d at 1200).

[38] See Opening Br.

[39] See Tr. at 309.

[40] Tr. at 23.

[41] Tr. at 309 (emphasis added).

[42] Docket no. 22.

7

because "the ALJ's [opinion]…that the treating physician's [] statement does not reflect the treating physician's own opinion is merely speculation"[43] and if the ALJ had these concerns she should have contacted Dr. Campbell.[44]

Lastly, Plaintiff argues that the ALJ's reasoning that there was no evidence in Dr. Campbell's medical records that indicated Plaintiff had severe depression and therefore Dr. Campbell was likely sympathizing with the Plaintiff when he wrote a letter to her landlord regarding her dogs in order to avoid unnecessary doctor-patient tension is not supported by the record because the Plaintiff's depression was worsening in the months leading up to the letter.[45]

In the 10th Circuit, "[t]he ALJ must give 'controlling weight' to the treating physician's opinion, provided that opinion 'is well-supported…and is not inconsistent with other substantial evidence.'"[46]  Further,

> [e]ven if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 404.1527]. Those factors are: (1) the length of treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.
>
> Under the regulations, the agency rulings, and [Tenth Circuit] case law, an ALJ must give good reasons…for the weight assigned to a treating physician's opinion…that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the

---

[43] Opening Br. at 8.

[44] Id. at 9.

[45] Id.

[46] White v. Barnhart, 287 F.3d 903, 907 (10th Cir. 2001)(citing 20 C.F.R. § 404.1527(d)(2)).

reason for that weight. If the ALJ rejects the opinion completely, he [or she] must give specific, legitimate reasons for doing so.[47]

In addition, as with other evidentiary matters, when an ALJ is considering medical opinion evidence, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies.[48] However, "[i]n choosing to reject [a] treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."[49]

Here, the ALJ did note that the Plaintiff and Dr. Campbell had a long-term doctor-patient relationship and then set forth three reasons for not giving Dr. Campbell's opinions controlling weight and finding them unpersuasive. However, without re-weighing the evidence, the Court concludes that the ALJ's stated reasons and conclusions are not well-supported.

First, the ALJ apparently finds a contradiction in Dr. Campbell's records due to the ALJ's own misquotation from Dr. Campbell's progress notes. Under the ALJ's interpretation, Dr. Campbell had concerns the Plaintiff might be abusing her medications. However, a review of the notes does not support such a conclusion. Dr. Campbell's February 18, 2010 progress note reveals that he "did not have concerns of abuse, divergent."[50] Accordingly, this Court agrees with the reasoning of a similar case decided by the Rhode Island District Court. In DiRocco v.

---

[47] Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004)(internal quotations and citations omitted); see also 20 C.F.R. § 404.1527(c); Social Security Ruling ("SSR") 96-2p.

[48] See e.g., Ruthledge v. Apfel, 230 F.3d 1172, 1174 (10th Cir. 2000); Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988).

[49] Langley at 1121 (quoting McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002)("holding [The 10th Circuit] held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's care is not a good reason to reject his opinion as a treating physician." Id. at 1253.)

[50] Tr. at 309.

Astrue the Court stated "[w]hile such a contradiction may constitute a "good reason" under the treating physician rule (20 C.F.R. §404.1527(d)(2)), it cannot when the premise is plainly based on a misquotation of the record."[51]  Therefore, the ALJ's misquotation of Dr. Campbell's progress note defeats the ALJ's first stated reason for rejecting Dr. Campbell's opinion and constitutes error.  In addition, because the correct quotation from Dr. Campbell could have changed the ALJ's conclusion as to the weight assigned to Plaintiff's treating physician's opinion, the Court finds this error not to be harmless.[52]

Second, this Court agrees with the Plaintiff that simply because Dr. Campbell may have filled out a form while the Plaintiff was present, it remains speculative whether or not the opinions are the combination of Dr. Campbell's opinions and the Plaintiff's subjective complaints.  Moreover, the Medical Opinion Form itself directly conflicts with the ALJ's assertions.  One of the questions on the form is "do your patient's subjective complaints seem reasonable in view of your observations and diagnoses?"[53]  To this question, Dr. Campbell answered "yes."[54]  Therefore, the very reason that the ALJ stated as her second reason for rejecting Dr. Campbell's opinion is contradicted by Dr. Campbell himself.

Similarly, the ALJ's statements that Dr. Campbell may have sympathized with the Plaintiff and satisfied her request for a letter to her landlord was possibly because Dr. Campbell wanted to avoid unnecessary doctor-patient tension constitutes improper speculation and

---

[51] DiRocco v. Astrue, No. 09-094S, 2010 WL 1490827 at *11 (D. R.I. January 14, 2010).

[52] See DiRocco, at *11 ("a finding of harmless error would inappropriately require the Court to step into the ALJ's shoes.")[52]

[53] Tr. at 672.

[54] Id.

inadequate lay opinion judgment by the ALJ.[55]  Contrary to the ALJ's assertion that "there is nothing in Dr. Campbell's medical records to substantiate 'severe depressions,'" the administrative record reveals that is evidence to substantiate Dr. Campbell's opinion.  Dr. Campbell treated the Plaintiff for depression (and other ailments) since at least February, 2009 and has had approximately seventeen office visits with her.[56]  A review of Dr. Campbell's notes reveals that of those visits there were less than five visits in which the Plaintiff's depression and/or stressors[57] were not specifically addressed.[58]  In addition, the same records demonstrate that Plaintiff's depression medication was increased over time.[59]  For example, two months prior to the drafting of the letter to the Plaintiff's landlord, Dr. Campbell increased Plaintiff's medication for Zoloft, an antidepressant, from 100 mg to 150 mg each day.[60]  Notes from this February 7, 2011 visit indicate the Plaintiff reported being quite depressed and stressed due to relationship and financial stressors.[61]  Importantly too, on April 7, 2011, (the date that Dr. Campbell authored the letter to the landlord) he noted that the Plaintiff's depression medication

---

[55] See Langley, at 1121; Charboneau v. Astrue, No. 11-cv-547-PJC, 2012 WL 533474748 at *6-7 (N.D. Okla. October 26, 2012)(finding that the language used by the ALJ in addressing the opinion evidence of a treating physician to be inadequate, improper and conclusory based upon the ALJ's use of the exact same sentence used by the ALJ in this case in rejecting Dr. Campbell's opinion, ("[W]hile it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case").  In so finding, the Court reasoned "the boilerplate language used by the ALJ in rejecting the opinion of Dr. Roberts is similar to the language previously disapproved by the Tenth Circuit in multiple cases."); see also Taylor v. Astrue, No. CIV-09-160-SPS, 2010 WL 3860437 at *4-5 (E.D. Okla. September 30, 2010).

[56]  See Tr. at 266-314, 556-568, 602-611; 641-647; 653-657; 677; 685-692.

[57] The most significant of Plaintiff's stressors discussed with Dr. Campbell include the fact that her husband suffers from transgender identity disorder which has affected her marriage significantly, she has engaged in various extramarital relationships, worries about her weight and also has financial stress due to bankruptcy and other issues. See Tr. at 266-314, 556-568, 602-611; 641-647; 653-657; 677; 685-692.

[58] See Tr. at 280-282; 312-314; 559-562; 565-568.

[59] Tr. at 292, 610.

[60] Tr. at 610.

[61] Tr. at 609.

11

was increased from 150 mg to 200 mg each day due to increase of social and financial stressors.[62]  Dr. Campbell also notes Plaintiff was living with her mother, feared homelessness and that her anxiety had been activated.[63]   Thus, although the word "severe" isn't specifically found in Dr. Campbell's progress notes, there is evidence that Plaintiff did suffer from depression from both relationship and financial stressors, her medication was increased over time and her depression was a topic of conversation at her visits with Dr. Campbell.  In light of the foregoing, the ALJ's assertion that "there is nothing in Dr. Campbell's medical records to substantiate 'severe depressions'"[64] warrants further review.

Therefore, because (1) the ALJ misquoted Dr. Campbell; (2) speculated as to whether Dr. Campbell's opinions were a combination of his professional opinion and the Plaintiff's subjective complaints despite contrary evidence within the record; and (3) the record does not support the ALJ's apparent opinion and credibility judgment that Dr. Campbell's notes do not evidence the Plaintiff's "severe depression[]," the ALJ erred by concluding that Dr. Campbell's opinions about Plaintiff's limitations were not entitled to controlling weight and were unpersuasive.

## CONCLUSION AND ORDER

Based on the foregoing, the Court holds that the Plaintiff's arguments regarding the ALJ's rejection of the Plaintiff's treating physician's opinions do have merit and warrant remand for further proceedings in this case.  Therefore, IT IS HEREBY ORDERED that the

---

[62] Tr. at 653.

[63] Id.

[64] Tr. at 23.

Commissioner's decision is REVERSED AND REMANDED for further proceedings consistent with this memorandum decision and order.

**IT IS SO ORDERED.**

        DATED this 19th day of February, 2013.

        Brooke C. Wells
        United States Magistrate Judge